Walter G. PIETSCH, et al., Citizens of the United States, Plaintiffs,

v.

George BUSH, President of the United States, Richard Cheney, Secretary of Defense, General Colin Powell, Chairman of the Joint Chiefs of Staff, and Various Unnamed Officials of the United States Responsible for Directing Acts of War in the Persian Gulf Area, et al., Defendants.

No. CV 91–0132 (ADS).

United States District Court, E.D. New York.

Jan. 16, 1991.

Walter G. Pietsch, Freeport, N.Y., pro se.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Robert L. Begleiter, Gary R. Brown, Stanley N. Alpert, Brooklyn, N.Y., for defendants.

### MEMORANDUM AND ORDER

SPATT, District Judge.

This lawsuit, brought by a citizen of the United States obviously concerned with impending, ominous world events, is an attempt to prevent hostilities between the United States and Iraq.

### I. THE COMPLAINT AND THE AFFIDAVIT

The Plaintiff's Complaint outlines, in narrative fashion, his version of the recent events in the Persian Gulf subsequent to the invasion and occupation of the nation of Kuwait by the nation of Iraq in August, 1990. The Complaint describes actions taken by the United States in response to the Iraqi invasion and occupation. For the purpose of this decision, the Court assumes the truth of all of the Plaintiff's allegations contained in the Complaint and all of the statements contained in the Plaintiff's Affidavit dated January 14, 1991, which is attached to his Order To Show Cause.

In the Complaint the Plaintiff alleges that the President of the United States, "from November, 1990 to January 10, 1991, repeatedly and continuously violated the Constitution of the United States by asserting that powers of declaring war, vested exclusively in the congress, were his." In addition, the Plaintiff alleges that the President committed three "overt" unconstitutional acts, namely (1) converted the status of the armed forces in the Persian Gulf from a defensive into an offensive force; (2) called-up reserve units to active duty status and transferred armed service forces from Europe to the Persian Gulf "for the stated purpose of launching a war of aggression against Iraq, on or after January 15, 1991"; and (3) promulgated military orders providing the armed forces in the Persian Gulf "with the capability to launch a war of 'terrible devastation' against Iraq."

The Complaint also recounts the Congressional Resolution adopted by a majority of both the United States Senate and the United States House of Representatives on January 12, 1991 (the "Resolution"). The Resolution provides in relevant part as follows:

"SECTION 2. AUTHORIZATION FOR USE OF UNITED STATES ARMED FORCES

(a) AUTHORIZATION.—The President is authorized, subject to subsection (b), to use United States Armed Forces pursuant to United Nations Security Council Resolution 678 (1990) in order to achieve implementation of Security Council Resolutions 660, 661, 662, 664, 665, 666, 667, 669, 670, 674, and 677.

(b) REQUIREMENT FOR DETERMINATION THAT USE OF MILITARY FORCE IS NECESSARY.—Before exercising the authority granted in subsection (a), the President shall make available to the Speaker of the House of Representatives and the President pro tempore of the Senate his determination that—

(1) the United States has used all appropriate diplomatic and other peaceful means to obtain compliance by Iraq with the United Nations Security Council resolutions cited in subsection (a); and

(2) that these efforts have not been and would not be successful in obtaining such compliance.

(c) WAR POWERS RESOLUTION REQUIREMENTS.—

(1) SPECIFIC STATUTORY AUTHORIZATION.—Consistent with section 8(a)(1) of the War Powers Resolution, the Congress declares that this section is intended to constitute specific statutory authorization within the meaning of section 5(b) of the War Powers Resolution.

(2) APPLICABILITY OF OTHER REQUIREMENTS.—Nothing in this resolution supersedes any requirements of the War Powers Resolution." (*See* Government's Letter Response, Exhibit A; *New York Times*, January 14, 1991, p. A11.)

The Plaintiff makes the following allegations, among others, with respect to the Resolution:

"In response, the President may now assert that Congress has ratified his initiative, thereby making it legal on all counts. Such an assertion cannot be sustained.

Congress did not act freely. It did not act on its own initiative. It was coerced; it was threatened; it was forced to decide, albeit a large number of its members displayed the courage to oppose the President's usurpation of power and his commitment to war.

The Court must hold that the scenario President Bush has staged has been illegal, immoral, and unconstitutional, at least from November, 1990 to the present time.

The Court must therefore hold that for this reason Congressional Resolutions passed on January 12, 1991, were coerced and are thus without force or effect."

The Plaintiff's affidavit also recites the passage of the Resolution and states that the President and Secretary of State Baker stated that they will launch "a war of 'terrible devastation' against Iraq."

## II.  THE ORDER TO SHOW CAUSE

By the proposed Order To Show Cause, the Plaintiff seeks the following temporary restraining order:

"pending the hearing of plaintiff's application for a preliminary injunction, defendants be temporarily restrained from assisting others in the initiation of acts of war against Iraq"

In addition, the Plaintiff asks the Court to schedule a hearing for a preliminary injunction on the following issue:

"why an Order should not be entered enjoining the defendants from initiating any and all acts of aggressive warfare against the nation of Iraq, which they have stated publicly may commence on or after January 15, 1991."

The Court also notes that the Plaintiff's Memorandum of Law, under the heading "Relief Requested," asks the Court to "state that the President and other Defendants are barred from initiating any and all acts of aggressive war against Iraq."

Finally, the Plaintiff—in a document he entitles "Addendum To Memorandum Of Law"—asks the Court "to exercise its own power to determine whether the President will have exceeded his powers under the law if, on January 16, 1991 or thereafter, he orders the commencement of offensive military action."

## III.  THE GOVERNMENT'S CONTENTIONS

Pursuant to the Court's instructions, the Government submitted opposition papers yesterday morning. The Government raises three defenses to the Plaintiff's application and Complaint: first, that Plaintiff's action is without merit, in light of the adoption of the Resolution by Congress this past weekend; second, that the Plaintiff lacks standing to bring this action; and third, that this action raises political questions which are beyond the jurisdiction of the Court to adjudicate.

The Court heard oral argument yesterday.

## IV. DISCUSSION

Article III, Section 2 of the United States Constitution provides as follows:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States ... to Controversies to which the United States shall be a Party...."

By its terms Article III, Section 2 of the Constitution limits the subject matter jurisdiction of the federal courts to determining "cases or controversies." This limitation is rooted in "the idea of separation of powers on which the Federal Government is founded." (*Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 [1984])

The "case or controversy" requirement has led the courts over the years to develop several doctrines interpreting the limitation on the subject matter jurisdiction of the federal courts by reason of the "case or controversy" requirement. "The Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." (*Allen v. Wright, supra,* 468 U.S. at p. 750, 104 S.Ct. at p. 3324; *see also United States v. Grundhoefer*, 916 F.2d 788, 791 [2d Cir.1990] ["[w]hether a party has standing in the federal courts is always considered within the framework of Article III, Section 2, Cl.1, that extends federal judicial power to all 'cases' and 'controversies,' and which first asks whether the challenged action has caused a plaintiff injury in fact"])

As stated by the Supreme Court:

"Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition *on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches,* and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *The requirement of standing, however, has a core component derived directly from the Constitution.* A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (*Allen v. Wright, supra,* 468 U.S. at p. 751 [104 S.Ct. at p. 3324] [emphasis supplied] [citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–75 [102 S.Ct. 752, 758–60, 70 L.Ed.2d 700] [1982])

The Plaintiff alleges that he has standing to bring this action "not only as a taxpayer, but because of the fact that in an illegal war HE IS BEING MADE AN ACCESSORY TO MURDER AGAINST HIS WILL." (Complaint, p. 3)

Recently in *In re United States Catholic Conference*, 885 F.2d 1020 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct.1946, 109 L.Ed.2d 309 (1990), the Second Circuit restated the three-pronged inquiry the Court must undertake to determine whether or not the Plaintiff has standing to maintain this action:

"First, plaintiffs must show that they have suffered an injury in fact that is both concrete in nature and particularized to them. Second, the injury must be fairly traceable to defendants' conduct. Third, the injury must be redressable by removal of defendants' conduct. The second and third prongs—traceability and redressability—often dovetail; essentially, both seek a causal nexus between the plaintiff's injury and the defendant's assertedly unlawful act. To establish standing, a plaintiff must plead all three elements." (*In re United States Catholic Conference*, 885 F.2d 1020, 1023–24 [2d Cir.1989] [citations omitted], *cert. denied,* [—— U.S. ——], 110 S.Ct.1946 [109 L.Ed.2d 309] [1990])

As to the first prong of the standing test, the injury "in fact" suffered by the Plaintiff

"must be concrete in both a qualitative and temporal sense. The complaint must allege an injury to himself that is 'distinct and palpable,' as opposed to merely

'[a]bstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" (*Whitmore v. Arkansas*, —— U.S. ——, 110 S.Ct. 1717, 1723 [109 L.Ed.2d 135] [1990] [quotations omitted])

Reviewing the Complaint and the Affidavit, it is clear to the Court that the Plaintiff has failed to "clearly and specifically set forth facts sufficient to satisfy" the injury in fact requirement (*see Whitmore v. Arkansas, supra*, 110 S.Ct. at p. 1723).

■ The Plaintiff is not in the armed forces or reserve forces of the United States, and therefore does not, and could not, contend that he is subject to military service in the Persian Gulf. The facts here are unlike the case where a member of the armed forces challenged his own deployment in the Persian Gulf (*see Ange v. Bush*, 752 F.Supp. 509, 512 n. 1 [D.D.C. 1990] ["Ange, being a soldier deployed in the Gulf, where he already is in a situation arguably illegal under the War Powers Resolution and subject to being ordered, at great personal risk, into a war which Congress may find illegal under the War Powers Resolution, has standing to seek enforcement of that legislation"]). This is also not a situation where a member of Congress asserted his own authority pursuant to Article I, Section 8, clause 11 of the United States Constitution to declare war. In *Dellums v. Bush*, 752 F.Supp. 1141, 1147 (D.D.C.1990), it was held that "members of Congress plainly have an interest in protecting their right to vote in matters entrusted to their respective chambers by the Constitution."

■ Here, the Plaintiff has not alleged a "distinct and palpable" injury in fact that he suffers by reason of the activities in the Persian Gulf. The Plaintiff's contention that he is being made "AN ACCESSORY TO MURDER AGAINST HIS WILL," and, as stated at oral argument, that this fact is causing him severe emotional distress, is too abstract to amount to a "case or controversy" under Article III, Section 2. In *Whitmore v. Arkansas, supra*, 110 S.Ct. at p.1724 it was held that one death row inmate did not have standing to challenge the scheduled execution of another death row inmate, since plaintiff "Whitmore provides no factual basis for us to conclude that the sentence imposed on a mass murderer like Simmons would even be relevant to a future comparative review of Whitmore's sentence." The Plaintiff in this case has similarly failed to articulate a concrete and, importantly, a particularized injury. (*See also Farsaci v. Bush*, CV 90–00010–P at p.4 [D.Me. January 11, 1991] [in class action brought seeking injunctive relief against the President's *de facto* declaration of war in the Persian Gulf, the court rejected claimed injuries of "existence in a state of war and increased fuel and travel cost" as basis for standing]; *Daly v. Bush*, CV 4–91–15 at p.7 [D.Minn. January ——, 1991] ["[t]he generalized nature of plaintiff's grievance, and the impending determinations by this Court's political and co-equal branches, counsel for judicial forbearance in this case"])

■ In addition, at oral argument Plaintiff contended that one member of the class of citizens he represents has two nephews currently stationed in the Persian Gulf. The Court also finds any alleged injury to this Plaintiff, herself not in the armed forces in the Persian Gulf, to be speculative. (*Compare Ange v. Bush, supra*)

■ Plaintiff's contention that he has standing "as a taxpayer" is also an insufficient allegation of injury in fact. The doctrine of "taxpayer standing" is an extremely limited one; it can be invoked only "to challenge Establishment Clause violations when the allegedly unconstitutional action was authorized by Congress under the taxing and spending clause of Art. I, § 8." (*In re United States Catholic Conference, supra*, 885 F.2d at p.1027; *see also Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1954, 20 L.Ed.2d 947 [1968] ["First, the taxpayer must establish a logical link between that status [as a taxpayer] and the type of legislative enactment attacked.... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged"])

This action neither involves the Establishment Clause—which provides that "Congress shall make no law respecting an establishment of religion" (U.S. Const. Amend. I)—nor the taxing and spending clause of the United States Constitution (Article I, Section 8, clause 1 ["The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States"]). To the contrary, Plaintiff's Claim is based on Congress' power to declare war pursuant to Article I, Section 8, clause 11 and challenges the President's authority under Article II, Sections 1 and 2 to "be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into actual service of the United States." Since neither the Plaintiff's Complaint nor the Plaintiff's proposed Temporary Restraining Order is based on the exercise by Congress of its taxing and spending power or "the executive branch's administration of a taxing and spending statute" (*In re United States Catholic Conference, supra*, 885 F.2d at p. 1027), the Plaintiff does not have taxpayer standing. (*See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra*, 454 U.S. at p. 477, 102 S.Ct. at 761 ["the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer"]; *see also Pietsch v. President of the United States*, 434 F.2d 861, 863 [2d Cir.1970] [in a litigation involving the same plaintiff, it was held by the United States Court of Appeals for the Second Circuit that "Pietsch's status as a federal taxpayer therefore does not entitle him to challenge the expenditure of funds for the Vietnam war"], *cert. denied*, 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 [1971])

Finally, the Court notes that the Plaintiff does not have standing merely because as a citizen of the United States he has an "interest" in seeing the Government act constitutionally. In *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), a citizens' group challenged the membership in the National Reserve by United States Congressmen as violative of the Ineligibility Clause of the Constitution (Article I, Section 6, clause 2). The plaintiffs contended that they had standing because as United States citizens they had an interest in insuring "the faithful discharge by members of Congress who are members of the Reserves of their duties as members of Congress, to which all citizens and taxpayers are entitled." (*Id.* at p. 212, 94 S.Ct. at p. 2928) The United States Supreme Court rejected this argument, and held:

> "standing to sue may not be predicated upon an interest of the kind alleged here which is *held in common by all members of the public*, because of the necessarily abstract nature of the injury all citizens share." (*Id.* at p. 220 [94 S.Ct. at p. 2932] [emphasis supplied])

The Plaintiff in this case has suffered no more cognizable injury in this case than did the citizens in *Schlesinger*, and, therefore, does not have standing to maintain this action.

\* \* \* \* \* \*

In these trying times, I understand the Plaintiff's deep concern for the loss of life in any future military action, and I appreciate the Plaintiff's altruistic purposes in bringing this lawsuit. However, this Court cannot legally alleviate these concerns. I am bound by the Constitution to solely adjudicate "cases or controversies" within the purview of our standing requirements. As the Supreme Court stated in *Schlesinger*:

> "Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." (*Schlesinger v. Reservists Committee to Stop the War, supra*, 418 U.S. at p. 227 [94 S.Ct. at 2935])

Since the Court finds that the Plaintiff has failed to allege an injury in fact, there is no need to proceed with the second and

third prongs of the standing inquiry or to address any of the Plaintiff's requests for relief, since the Court does not have subject matter jurisdiction to hear this case. (*See In re United States Catholic Conference, supra,* 885 F.2d at p.1023 ["when a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case"])

As a result, the Plaintiff's application for a Temporary Restraining Order is denied, the Plaintiff's application for a Preliminary Injunction hearing is denied, and the Complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter a Judgment dismissing the Complaint.

SO ORDERED.