**Joseph A.F. SADOWSKI, Plaintiff,**

v.

**George W. BUSH, et al., Defendants.**

**No. CIV. 02–1766(RJL).**

United States District Court,
District of Columbia.

June 19, 2003.

Joseph A. F. Sadowski, Plaintiff, pro se, Hicksville, NY.

Oliver W. McDaniel, U.S. Attorney's Office for the Dist. of Columbia, Washington, DC, for George W. Bush, Tommy G. Thompson, John D. Ashcroft.

### *Memorandum Opinion and Order*

LEON, District Judge.

### I. Introduction

The plaintiff, a citizen of the United States who lost two relatives in the September 11, 2001, terrorist attacks, brings this suit, *pro se,* against George W. Bush, President of the United States, Tommy G. Thompson, Secretary of the U.S. Department of Health and Human Services, and John D. Ashcroft, Attorney General of the United States, Head of the U.S. Department of Justice. He alleges in his complaint that the defendants, "violated their oath of office and has [sic] warred against the Constitution of the United States, therefore, violating the rights of the people costing tax payers billions of dollars each year, wherefore, placing the citizens of the United States in a situation that the citizens must pay higher taxes for this discretion not to address the issue of illegal

aliens and have them deported." (capitalization removed). *See* Pl.'s Compl. ¶ 1.

The plaintiff asks this Court to declare that: (1) the language a person speaks cannot be equated to the person's national origin under Title VI of the Civil Rights Act of 1964, as amended; (2) choosing to speak or use English is not national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, as amended; (3) the defendants have violated the Administrative Procedures, Small Business Regulatory Enforcement Fairness, Regulatory Flexibility and Paperwork Reduction Acts; and (4) the defendants have violated the plaintiff's rights in an arbitrary, capricious, unjustified, and unreasonable manner. The plaintiff also asks this Court to enjoin the defendants from: (1) enforcing or implementing Executive Order 13166, and (2) enforcing any interpretation of Title VI of the Civil Rights act of 1964, as amended, which equates language and national origin. In addition, the plaintiff made a subsequent filing entitled "Notice of Emergency Motion for the Removal of George W. Bush as Commander and Chief of the Armed Forces of the United States and/or Secure Our Borders" in which he asks this Court to: (1) issue an order to close the borders between the United States and Mexico, and (2) issue an order to have the borders secured by troops and/or for federal agencies to enforce the laws which have been enacted. Finally, on March 21, 2003, the plaintiff filed a so-called motion for a "Temporary Restraining Order" asking that the defendants be enjoined from (1) taking further steps in reference to declaring war until the borders of the United States are closed, (2) taking steps in the war against Iraq until suspected terrorists are removed from within the borders of the United States, and (3) signing any laws or granting any policies as to alleged violations of aiding and abetting known felons within of the Immigration Act until this case is heard.

Before the Court is a motion by the defendants seeking to dismiss all of the claims for lack of jurisdiction because the questions presented are nonjusticiable political questions, because the plaintiff lacks standing, and because it fails to state a claim upon which relief can be granted. For the following reasons, the Court grants the defendants' motion to dismiss as to each action filed with the Court.

## II. Discussion

### A. Standard of Review

 The plaintiff bears the burden of establishing that the court has jurisdiction on a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1). *Dist. of Columbia Retirement Bd. v. United States,* 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90, *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court need not, however, accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *E.g., Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). Moreover, the court need not limit itself to the allegations of the complaint. *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court, where necessary, may consider the complaint supplemented by undisputed facts along with the court's resolution of disputed facts to determine whether it has jurisdiction over the case. *Herbert v. Nat'l*

*Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992).

The court cannot grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Thus in evaluating the defendants' motion the court will assume the truth of all of the factual allegations set forth in the plaintiff's complaint. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985), and will construe the complaint liberally in favor of the plaintiff. *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979).

■ The plaintiff in this matter proceeds *pro se.* A *pro se* complaint is held to a less stringent standard than formal pleadings drafted by lawyers. *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 n. 2 (D.C.Cir.2000) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Although a court will read a *pro se* plaintiff's complaint liberally, a *pro se* plaintiff must present a claim on which the court can grant relief. *Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C.Cir. 1981).

## B. Analysis

Both the plaintiff's constitutional claims (e.g., violations of Articles I, II, IV, and VI, as well as of the Fifth and Fourteenth Amendments) and his statutory claims stem from the same factual allegations— that the defendants have allowed illegal immigrants into the United States and have not fully enforced the immigration laws.

This claim necessarily implicates questions of immigration policy or allegations that the defendants have failed to enforce certain immigration laws. The claims that implicate general immigration policy include the allegations that: (1) the defendants have violated 8 U.S.C. § 1324 by offering services to illegal aliens and by allowing children of illegal aliens to be considered citizens, thereby "encouraging" or "inducing" aliens to enter the United States illegally, and (2) the defendants have violated 42 U.S.C. §§ 1985, 1983 by not making illegal aliens pay taxes and allowing illegal aliens to receive medical treatment and educational services, thereby depriving plaintiff of equal protection and his civil rights.[1] The defendants contend that because the plaintiff lacks standing to bring both the statutory and constitutional claims and because both sets of claims pose nonjusticiable political questions, the complaint should be dismissed for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1). The Court agrees.

### 1. Standing

■ In order to establish standing, the plaintiff must show three things. First, the plaintiff must have suffered an injury

---

1. In a supplemental filing the plaintiff alleged that the defendants are liable under a state-created danger theory which subjects a State or municipality to liability for danger created by a State or municipality actor's deliberate indifference to a risk to the victim, pursuant to 42 U.S.C. § 1983. The plaintiff cites *McClendon v. City of Columbia,* 258 F.3d 432, 435 (5th Cir.2001), which held that when state actors knowingly place a person in danger they are accountable for foreseeable injuries. The Court finds this argument inapplicable not only because the defendants are federal actors, *see District of Columbia v. Carter,* 409 U.S. 418, 423, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), but also because the plaintiff has not alleged any particularized injury to himself as a result of defendant's alleged actions or omissions.

in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury must be legally cognizable, meaning there has been an invasion of a legally protected interest that is concrete and particularized to the plaintiff and that the injury was actual or imminent, not conjectural or hypothetical. *Id.* at 560–61, 112 S.Ct. 2130. Second, there must be a causal connection between the injury and the defendant's alleged conduct. *Id.* Third, the injury should be able to be redressed through the relief requested. *Id.*

█ As to the first requirement, the plaintiff has failed to allege any personal injury that he has suffered, actual or imminent as a result of the alleged failure of the defendants to enforce the immigration laws. Although he points to general harms caused by the Administration's immigration policies, the plaintiffs has failed to show how they have specifically injured him. Merely alleging that he lives in an area affected by illegal immigration is not enough to show standing. *See Federation for American Immigration Reform, Inc. v. Reno,* 93 F.3d 897, 901 (D.C.Cir.1996), *cert. denied,* 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997) [hereinafter "FAIR"].[2]

As to the second requirement, the plaintiff has additionally failed to allege any causal connection between the defendant's alleged failure to enforce the immigration laws and any harm to him. Under Art. III, § 2 of the Constitution federal courts have jurisdiction only over cases and controversies. The plaintiff has not alleged that he has been specifically injured by the presence of illegal aliens. Thus, the Court lacks standing as to these claims.

### 2. Political Question Doctrine

█ Even if the plaintiff had standing, his constitutional claims largely relating to existing immigration policy and enforcement of immigration laws would have to be dismissed because they present nonjusticiable political questions. *See Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Deciding and implementing immigration policy has been textually committed to the political branches, and there exists no judicially manageable standards to decide how best to implement immigration laws. *See, e.g., Padavan v. U.S.,* 82 F.3d 23, 27 (2nd Cir.1996); *New Jersey v. U.S.,* 91 F.3d 463, 470 (3rd Cir.1996). Because of the many policy questions inherent in deciding such an issue, the judicial branch is not well-equipped to resolve it. Indeed, deciding how to best enforce existing immigration laws and policies and how to keep out illegal immigrants requires making policy judgments that are suited for nonjudicial discretion and thus should not be made by the judiciary. Moreover, independent resolution of how to enforce immigration laws by a court would infringe upon the prerogative of both the executive and legislative branches of government. *See New Jersey,* 91 F.3d at 470 (holding that state of New Jersey's claims against the United States seeking costs incurred by state related to illegal immigrants presented nonjusticiable political questions). Thus, the constitu-

---

2. In *FAIR* an immigration reform group brought suit against the Attorney General alleging that the government's scheme for treating Cuban nationals in the immigration process violated federal immigration law. *Id.* at 899. In *FAIR,* the court found that although the members of the organization had an interest in limiting the effects of immigration, this interest was so widespread and the alleged injury was common to the entire population so as to prevent them from having standing. *Id.* at 901. Similarly, because the plaintiff in the instant action has not shown a *particularized* injury, he has no standing to bring these claims.

tional claims based on the allegation that the defendants have failed to enforce immigration laws and failed to keep out illegal immigrants must be dismissed because they present nonjusticiable political questions and therefore the Court does not have jurisdiction to hear them.

■ The plaintiff's statutory claims relating to the defendant's alleged failure to enforce immigration laws similarly include claims that raise issues that are nonjusticiable political questions, namely how to best enforce immigration policy. These claims are beyond the jurisdictional reach of the Court. Simply stated, the plaintiff's claim that the defendants have not adequately enforced immigration laws is an unreviewable exercise of agency discretion. Whether the defendants have adequately managed the immigration laws, and whether defendants used appropriate methods to deal with the problem of illegal immigration, are issues within the agency's discretion,[3] and are not reviewable. *See, e.g., Texas v. U.S.,* 106 F.3d 661, 667 (5th Cir. 1997); *Padavan,* 82 F.3d at 29; *Chiles v. U.S.,* 69 F.3d 1094, 1096 (11th Cir.1995).

■ Finally, the plaintiff also alleges that the defendants have failed to enforce tax laws against illegal aliens and have allowed illegal aliens to make demands on the American public, to threaten the American public, and to make a mockery of the English language. The Court similarly lacks jurisdiction to hear these types of claims. Failure to enforce the tax laws, like plaintiff's claims relating to failure to enforce immigration laws, raises general policy questions and thus presents nonjusticiable political questions that are beyond the jurisdictional reach of this Court.

### C. Motion for "Temporary Restraining Order"

■ The plaintiff's last submission, a self-styled motion for a "temporary restraining order," must also be denied because the plaintiff lacks standing to bring the motion and because it similarly presents nonjusticiable political questions. The plaintiff's claim that the President is violating Congress's war powers under Article I, § 8 of the Constitution must also be denied because the plaintiff lacks standing to bring such a motion. The plaintiff has not alleged any personal, particularized injury that he has suffered, actual or imminent. Not being in the armed forces of the United States, he could not even contend, as the plaintiff had in *Ange v. Bush,* that he is subject to military service in the current conflict in Iraq. *See Ange v. Bush,* 752 F.Supp. 509 (D.D.C.1990). The only implicit injury he seems to allege is that without first securing the borders and deporting suspected terrorists, going to war with Iraq will decrease security within the United States. However, such an injury is too generalized and applies equally to all residents of the United States. *See, e.g., FAIR,* 93 F.3d at 901; *Pietsch v. Bush,* 755 F.Supp. 62, 66 (E.D.N.Y.1991) (holding that citizen who sued President and military officers in order to block military activities occurring the Persian Gulf had no standing). Thus, the plaintiff has no standing to bring the motion for a temporary restraining order asking the defendants to halt military action in Iraq until the borders are secure and suspected terrorists are deported.

■ Moreover, even if the plaintiff had standing, his motion would have to be de-

---

**3.** *See* 8 U.S.C. § 1103(a)(5) ("[The Attorney General] shall have the power and duty to control and guard the boundaries and borders of the United States against illegal entry of aliens and shall, in his discretion, appoint for that purpose such number of employees of the Service as to him shall appear necessary and proper.")

nied because he is asking the Court to determine whether President Bush's decision to go to war against Iraq was proper. To do so, the Court, in essence, would have to "determine precisely what allocation of war power the text of the Constitution makes to the executive and legislative branches," a political question this Court lacks jurisdiction to determine. *Ange,* 752 F.Supp. at 512. Similarly, in the instant case, the plaintiff is asking the Court to determine whether or not the President's decision to go to war was within his constitutional authority. Such a determination necessarily involves nonjusticiable political questions; primarily because war powers have been explicitly committed to the political branches. *Id.* at 512; *see also Baker,* 369 U.S. at 217, 82 S.Ct. 691. The Supreme Court in *Harisiades v. Shaughnessy,* 342 U.S. 580, 589, 72 S.Ct. 512, 96 L.Ed. 586 (1952), *reh'g denied,* 343 U.S. 936, 72 S.Ct. 767, 96 L.Ed. 1344 (1952) stated, "policies in regard to the conduct of foreign relations [and] the war power . . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Furthermore, there are no judicially discoverable and manageable standards for resolving such issues as the judiciary lacks the expertise, resources, and authority to do so. *Ange,* 752 F.Supp. at 514; *see also Baker,* 369 U.S. at 217, 82 S.Ct. 691. This lack of judicially manageable standards in making these types of determinations is further evidenced by the fact that many courts have refused to exercise jurisdiction in such cases for precisely that reason. *Ange,* 752 F.Supp. at 514; *Mitchell v. Laird,* 488 F.2d 611, 616 (D.C.Cir. 1973); *Da Costa v. Laird,* 448 F.2d 1368, 1370 (2d Cir.1971), *cert. denied,* 405 U.S. 979, 92 S.Ct. 1193, 31 L.Ed.2d 255 (1972); *Lowry v. Reagan,* 676 F.Supp. 333, 339–41 (D.D.C.1987); *Sanchez–Espinoza v. Reagan,* 568 F.Supp. 596, 600 (D.D.C.1983), *aff'd,* 770 F.2d 202 (D.C.Cir.1985); *Crock-*

*ett v. Reagan,* 558 F.Supp. 893, 898 (D.D.C.1982), *aff'd,* 720 F.2d 1355 (D.C.Cir. 1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984); *Atlee v. Laird,* 347 F.Supp. 689, 705 (E.D.Pa.1972) (three judge court), *aff'd* 411 U.S. 911, 93 S.Ct. 1545, 36 L.Ed.2d 304 (1973).

In his motion the plaintiff also asks that the defendants be enjoined from "granting any policy and/or signing any prospected law or Laws into Law, or memorandums, or Executive Orders, until this case is heard, as to the alleged violations of aiding and abetting known Felons, within violations of the Immigration Act, as in § 1325 and § 1325." Again this request is outside the jurisdiction of the Court because it presents a nonjusticiable political issue. Because deciding policy and signing laws has already been textually committed to the Executive, *see* U.S. Const. art. I, § 7, it is not for the Court to decide whether or not the Executive should sign laws or when they should be able to do so. Thus, plaintiff's final request is similarly beyond the jurisdiction of this Court.

### III. Order

For all of the above reasons, it is on this 19th day of June, 2003, hereby

**ORDERED** that plaintiff's Emergency Motion for Removal of George W. Bush as Commander in Chief of the Armed Forces of the United States and/or Secure our Borders [# 12] is DENIED;

**ORDERED** that the plaintiff's motion for a temporary restraining order [# 21] is DENIED;

**ORDERED** that the defendants' motion to dismiss [# 9] is GRANTED;

**ORDERED** that plaintiff's claims are dismissed with prejudice;

**SO ORDERED.**