**Danforth MANNING,**
**Plaintiff–Appellant,**

v.

**The UPJOHN COMPANY,**
**Defendant–Appellee.**

**No. 88–1272**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1989.

---

Donald E. Cummings, Ralph H. Brock, Lubbock, Tex., for plaintiff-appellant.

Richard R. Brann, Paul Mitchell, Houston, Tex., for defendant-appellee.

Before POLITZ, JOHNSON, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff Danforth Manning appeals from a judgment rendered for defendant the Upjohn Company ("Upjohn") in his suit for wrongful discharge. We affirm.

### I.

The underlying facts are not in dispute. Manning was hired as a pharmaceutical salesman by Upjohn in 1964. At the time he was employed, he received Upjohn's employee handbook (the "handbook"), which contained the company's policies on vacations, disability pay, retirement, and a policy on reasonable corrective efforts to improve performance. Upjohn from time to time supplemented or changed the handbook without notice to its employees.

For over seventeen years, Manning was a successful salesman for Upjohn in and around the Lubbock, Texas, area. In 1982, however, his performance began to slip. Upjohn notified him that, should his performance not improve in the last four months of 1982, the company would put him on probation. His performance did not improve, and on February 25, 1983, the company notified him that he was being placed on probation immediately. In essence, Manning was told to meet several performance criteria by August 1, 1983; the company warned that "[s]hould these criteria not be met, then you may have to seek other employment."

By letter dated September 13, 1983, Upjohn extended the period of Manning's probation until January 1, 1984, and altered one of the terms of his probation by lowering the goal which he was expected to meet. Again, the company warned that "when sales figures are in for the Year of 1983, should the criteria stated not be met, you should be prepared to seek other employment."

Although the parties dispute whether Manning met the terms of his probation, Upjohn terminated Manning's employment on January 10, 1984. Two years later, Manning filed an original petition in a Texas state court, and Upjohn removed the case to federal district court. After a

bench trial on the issue of liability, the district court found that Manning's employment was "at-will" under Texas law and that he could therefore be discharged at any time with or without cause. In addition, the district court found that even if Manning's employment contract had been modified to contain a requirement that he only be discharged for good cause, Upjohn had good cause to terminate Manning's employment. Accordingly, the district court entered judgment for Upjohn.

## II.

Although the common-law doctrine of employment-at-will has been under attack in a number of states, Texas courts have not been hesitant to declare that it is alive and well in Texas.[1] Of course, Texas courts will enforce a contract limiting the employer's right to discharge an employee; to establish a cause of action for wrongful termination, however, an employee must prove that

> (1) he and his employer had a contract that specifically provided that the employer did not have the right to terminate the employment contract at will; and (2) the employment contract was in writing.

*Lumpkin,* 755 S.W.2d at 539. *See also Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.).

In this case, the district court found that there was no agreement limiting Upjohn's right to terminate Manning's employment at will and, in the alternative, that even if Manning could be discharged only for cause, good cause existed for his discharge. Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented. Accordingly, because we conclude that the district court's factual finding that good cause existed for Manning's discharge is not clearly erroneous, *see* Fed.R.Civ.P. 52(a), we do not reach, and express no view upon, the issue of whether Upjohn contractually agreed to limit its right to terminate Manning's employment at will.

If an employee, because of contractual arrangements, can be discharged only for good cause, Texas law places upon the employer the burden of proving that good cause existed for the employee's discharge. *See Advance Ross Electronics Corp. v. Green,* 624 S.W.2d 316, 318 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). If a good-cause requirement is present in this case, the parties agree that it is to be found only in the probation letter sent by Upjohn to Manning that cautions Manning that "when sales figures are in for the Year of 1983, should the criteria stated not be met, you should be prepared to seek other employment."[2] We thus review the record to

---

1. *See Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985) ("This court in *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888), held that employment for an indefinite term may be terminated at will and without cause. The courts of Texas have steadfastly refused to vary from that holding."); *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 539 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Salazar v. Amigos del Valle, Inc.,* 754 S.W.2d 410, 413 (Tex.App.—Corpus Christi 1988, no writ); *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ). In *Sabine Pilot Serv., Inc.,* the Texas Supreme Court recognized a "narrow" exception to the employment-at-will doctrine, holding that an employer may be liable for damages in a wrongful discharge action if the at-will employee establishes that the sole reason for the discharge was that the employee refused to perform an illegal act. *See* 687 S.W.2d at 735. The Texas Legislature has also created several similarly-narrow exceptions to the doctrine. *See, e.g.,* Tex.Rev.Civ.Stat. Ann. art. 8307c (prohibiting discharge for filing a worker's compensation claim). Calls for the wholesale repudiation of the doctrine in Texas, however, have fallen on deaf ears. *See Lumpkin,* 755 S.W.2d at 540.

2. On appeal, Manning correctly notes that under Texas law, Upjohn's employee handbook does not constitute a modification of his employment contract with Upjohn. *See Aiello v. United Air Lines, Inc.,* 818 F.2d 1196, 1198 (5th Cir.1987); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ) (absent an express reciprocal agreement dealing with procedures for discharge, employee handbooks "constitute[ ] no more than general guidelines" and create no contractual rights in employees). Instead, he argues that the district court erred by finding that the two letters he received notifying him that he was being placed

determine whether there is sufficient evidence of Manning's failure to meet the terms of his probation to indicate that the district court's finding of good cause is not clearly erroneous.[3]

There is ample evidence in the record indicating that Manning's supervisors terminated his employment because he failed to meet the probationary criteria. All of his supervisors testified that they considered Manning's sales figures for 1983, concluded that he had failed to meet the probationary criteria, and terminated him on that basis. Their testimony is bolstered by a report written one day after Manning was terminated, which notes his poor performance for the three years prior to his termination and the details of his probation, and concludes that "[Manning] has not met the terms of his probation to continue employment."

Manning challenges this testimony on two grounds. First, he argues that, contrary to the terms of his probation, his supervisors failed to abide by their promise to consider various "uncontrollable factors," such as population declines and changes in pharmacies' buying habits, in determining whether he met the terms of his probation; had they done so, he argues, they would have been forced to conclude that he had met the criteria.

Manning's argument is belied by his supervisors' testimony. Each testified that he was aware of all of the uncontrollable factors affecting Manning's sales performance, and took these factors into account in determining that he had failed to satisfy the probationary criteria. In circumstances such as these, where a factual finding is dependent upon an assessment of witnesses' credibility, we are loathe to question the judgment of the district court. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We find no reason to do so here.

Manning also argues that the evidence shows that it was impossible for his supervisors to have based his termination upon his failure to meet the probationary criteria, as they did not yet have, at the time he was discharged, the 1983 sales figures for his sales area. Although he is correct in noting that the date on the exhibit listing these figures is January 17, 1984, one week after he was terminated, this is insufficient to prove that the figures were not available before that time. There is no indication that the exhibit was the sole source of information on sales figures; Manning's immediate supervisor testified that sales figures were usually available in the "first week of January"[4] and that the exhibit could have been a second, duplicate report. Elsewhere in the record, Manning's supervisors testified that they had access to his sales figures, adjusted them by considering uncontrollable factors, and determined that Manning had failed to meet the terms of

on probation did not constitute an agreement by Upjohn to modify his contract to provide that he could be terminated only if he failed to meet the terms of his probation.

3. The district court did not specifically find that Upjohn's "good cause" for dismissing Manning was his failure to meet the terms of his probation; rather, it found that Manning's employment was terminated for "poor performance," and, therefore, good cause. Elsewhere, the findings note both Upjohn's complaints about Manning's job performance over the last several years of his employment and Upjohn's conclusion that he did not meet the probationary criteria.

Manning argues that the finding that good cause existed for his discharge was clearly erroneous insofar as it was based not upon his failure to meet the probationary criteria, but upon his general performance both before and

during his probation. We believe that Manning misconstrues the findings. Reading them in a common-sense fashion, we interpret them as meaning that both Manning's pre-probationary and probationary performances were so "poor" as to justify his discharge. If this were not the case, the lengthy and detailed findings of fact relating to Manning's probation would be superfluous. Since the only standard in the record by which to judge whether Manning's probationary performance was "poor" is the probationary criteria—reprinted in full twice in the district court's memorandum opinion—the court necessarily accepted Upjohn's contention that Manning had failed to meet the criteria, thus justifying his discharge.

4. This testimony is supported by exhibits listing sales figures for 1981 and 1982, which both bear dates indicating that they were available in the first week of January.

his probation.[5]  In these circumstances, we cannot conclude that the district court's finding that Upjohn had good cause for discharging Manning was clearly erroneous.

### III.

We hold that the record indicates that Manning failed to meet the terms of his probation, and that the district court's finding that Upjohn had good cause for terminating Manning's employment is therefore not clearly erroneous.  The judgment of the district court is AFFIRMED.

**5.** Other evidence in the record supports their testimony. The date on the exhibit listing Manning's sales figures for 1983, for example, is January 3, 1984, one week *before* he was fired. These figures show that Manning suffered a 1.3% drop in sales while the sales district in which his territory was located showed a 8.5% gain.  Because Manning's supervisors were likely familiar with the sales figures for the sales area in which his sales district was located, it does not require any leap of faith to conclude that Manning failed to meet the terms of his probation.