**Jay Y. CRUM, Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC., Defendant–Appellee.**

No. 91–1467
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1991.

Rehearing Denied Dec. 12, 1991.

**424**

L.N.D. Wells, Jr., Irving, Tex., for plaintiff-appellant.

Cecil E. Munn and Ralph H. Duggins, Cantey & Hanger, Ft. Worth, Tex., for defendant-appellee.

Before REYNALDO G. GARZA, POLITZ and DUHÉ, Circuit Judges.

PER CURIAM:

Jay Y. Crum ("Crum") alleges that American Airlines ("AA") discharged him as publisher of its in-flight magazine, *American Way,* in violation of an employment contract. Crum further accuses AA of fraud, defamation, intentional infliction of emotional distress and age discrimination. For the reasons outlined below, we affirm in all respects the district court's grant of summary judgment in favor of AA on all claims.

### PROCEDURAL HISTORY

Crum filed his complaint in the 96th District Court of Tarrant County, Texas, in March of 1989. AA filed a general denial and removed the case to the District Court for the Northern District of Texas.

On April 10, 1990, AA moved for summary judgment, which the court granted on July 27. The district court found that Crum was an "at-will" employee whose discharge was not a breach of contract, that Crum had failed to make a *prima facie* age discrimination claim, and that there was no evidence of malice necessary to support Crum's slander claim. AA had not sought summary judgment on the fraud claim, which the court found to be tenable.

The parties briefed the fraud issue and Crum filed a motion to reconsider summary judgment on the other claims. He also contended that he had been denied sufficient discovery to prosecute his fraud claim. On March 25, 1991, the court denied Crum's motion to reconsider and gave him 11 days to file a detailed list of discovery that he would need to defend against summary judgment on the fraud issue, with the

understanding that his "response shall only relate to the fraud issue and no other issues or claims." Crum responded on April 4, 1991, informing the court that he had "no discovery list so limited."

On April 25, 1991, the court issued its order dismissing the fraud claim. On the same date, the court entered a final judgment dismissing Crum's action on the merits.

## FACTS

AA hired Crum to be publisher of *AMERICAN WAY* in July of 1986 and terminated him in November of 1988. During his employment at AA, Crum reported to Vice President Lowell Duncan who was responsible for AA's Communications Department. The magazine prospered during Crum's tenure and gained industry-wide recognition, including several awards. Consequently, Crum's salary went from $80,000 to $130,000.

It appears, however, that Crum had poor relations with his staff. *AMERICAN WAY* lost key members of its staff, allegedly due to Crum's managerial style which one former staffer described as "tyrannical." Crum, on his part, felt that his staff became increasingly insubordinate, due in part to encouragement from Duncan. Morale at the magazine continued to deteriorate until the problem came to a head in October, 1988, when Crum went over his supervisor's head and sent a forceful memo to AA's CEO, Robert Crandall as well as to its Vice–President of Human Resources (who also served as general counsel), Anne McNamara, explaining that the situation had become intolerable and that he had even suffered a mild heart attack.

Crandall instructed Duncan to investigate and resolve the situation. Duncan gave Crum leave with pay and called in an industrial psychologist/management consultant from New York, Dr. Alexander Platt, who interviewed Duncan, Crum and several other staff personnel. Platt, who described the magazine as one of the worst organizations that he had ever seen, determined that the situation at *AMERICAN WAY* could not be salvaged as long as Crum remained in charge and recommended his dismissal.

On November 11, 1988, Duncan offered Crum a chance to resign. Crum, however, indicated that he preferred termination. Crum then requested a post-termination hearing. According to AA Regulation 135–4 Part II, which describes procedures for such hearings on appeals from terminated management employees, the hearing would normally have been conducted by the Departmental Vice President. Duncan, however recused himself, and McNamara replaced him as hearing officer.

According to Regulation 135–4,

[t]he hearing will not be adversarial for its purpose is to provide the employee an opportunity to present facts bearing on the discipline or discharge action.

On March 17, 1989, McNamara wrote to Crum's counsel stating that "[a]fter reviewing this matter and reflecting on it, I have decided to sustain Mr. Duncan's decision. I am sorry that my decision could not be favorable."

## ANALYSIS

Crum contends that the district court erred in holding that no genuine issues of material fact existed in this dispute. The United States Supreme Court has stated that

[Federal] Rule [of Civil Procedure] 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ... Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (footnotes omitted).

For the reasons discussed below, we find that summary judgment in favor of AA was proper.

*I. Crum's Employment was "At–Will."*

Crum maintains that the wording of his application for employment in conjunction with AA's Rules and Regulations established a contract according to which he could be terminated only for good cause. The district court, however, found

> that Crum was an employee-at-will, and that such employment status enabled American to terminate Crum at any time, with or without cause. American argues that Crum was terminated as a result of his inability to effectively manage people. Therefore, even if the Court bought into Crum's argument that he had to be terminated for cause, American has sufficiently shown by the voluminous deposition testimony that the sole reason for firing Crum was his inability to effectively deal with people in his managerial role. These decisions, as made by American in this case, are necessary to control day to day corporate life. For the Court to second guess American's discretionary decision to terminate Crum would severely hinder the rights of employers everywhere to effectively control and manage their companies. At the same time, the Court has not ignored the safeguards available to employees. However, Texas law has consistently provided for the employment-at-will status unless otherwise amended by specific contractual arrangements or agreements. Such agreements or arrangements are absent here.

■ We need not resolve whether the district court correctly determined both the nature of Crum's employment *and* the absence of any genuine issue of material fact as to whether AA terminated it for cause because "[p]rinciples of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any

other issues that might be presented." *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir.1989). In *Manning*, another case dealing with Texas law of employment, the district court had similarly determined that a discharged pharmaceutical salesman had been employed at-will, and that in any case his firm had dismissed him for cause. In affirming the district court, we noted that we need only resolve one issue. As *Manning* was an appeal after a full bench trial, the most appropriate issue was whether the district court's decision that the pharmaceutical company had terminated the plaintiff for cause was clearly erroneous. As the case before us was decided by summary judgment and we review it *de novo*, we believe that the most appropriate issue for our review is not whether any reasonable factfinder could have found that Crum had not been discharged for good cause, but rather the legal question of whether or not AA had contractually waived its right under Texas law to terminate him at-will. Strictly speaking, our task goes beyond mere contract interpretation to the question of whether these parties had contracted at all. Such a question would often be a question of fact. In this case, however, whether or not a contractual waiver exists depends upon the significance of documents discussed below and is therefore a question of law which the reviewing Court examines *de novo* whether or not it comes before us after summary judgment. *See Cotton Bros. Baking v. Industrial Risk Insurers*, 941 F.2d 380, 384–85 (5th Cir. 1991).

The job application, read and signed by Crum, was for an indefinite period of employment and reads:

> I, the undersigned, state that all information given by me in this application is true to the best of my knowledge. I authorize American Airlines, Inc. (herein called the company) to verify such information and to contact any reference given by me. Should I be employed by the company, I agree that:
> 1. My employment shall be in accordance with the terms of (A) this application, (B) company rules and regulations

and any amendments thereto and (C) any applicable labor agreement. *The company shall have the right to amend, modify or revoke its rules and regulations at any time.* I will familiarize myself promptly with such rules and regulations now or hereafter in effect.

2. *My employment may be terminated by the company at any time without advance notice,* its only obligation being to pay wages or salary earned by me to date of termination. Without limitation, failure to abide by company rules and regulations, failure to pass any company physical examination and the falsification of any information given by me in this application will entitle the company to terminate my employment.

[Emphasis added].

We have frequently recognized that "[a]lthough the common-law doctrine of employment-at-will has been under attack in a number of states, Texas courts have not been hesitant to declare that it is alive and well in Texas." *Manning,* 862 F.2d at 547. Recently, we noted that

Texas courts continue to follow the historical rule that, absent a specific contract term to the contrary, employment contracts are terminable at will by either party. *East Line & Red River R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). Therefore, to establish wrongful termination, an employee must first prove that he and his employer had a contract specifically depriving the employer of the right to terminate the employee at will. *See Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.).

*Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.1991) (per curiam) (district court erred in holding that company rules and regulations dealing with discipline and termination rendered an employee's employment terminable only for good cause because they did not purport to make termination an option for the employer only for good cause).

We also noted that "Texas law 'general[ly] reject[s] the claim that employment

manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.'" *Id.* (*quoting Aiello v. United Air Lines, Inc.,* 818 F.2d 1196, 1198 (5th Cir.1987)).

■ Nevertheless, Crum claims that the wording of his job application made AA's Rules and Regulations, which outline procedures to be followed in the disciplining and termination of employees, part of an employment contract in which AA waived its right to terminate him at will. Crum relies on *Aiello.* In that exceedingly close case, a divided panel found "that when 'an employer's manual or handbook contains detailed procedures for discipline and discharge *and* expressly recognizes an obligation to discharge only for good cause, a contract modifying the at-will rule may be found.' *Hicks v. Baylor Univ. Med. Center,* 789 S.W.2d 299, 302–03 (Tex.App.— Dallas 1990, no writ [error denied Oct. 10, 1990] ) (discussing the *Aiello* case)." *Zimmerman,* 932 F.2d at 471 (emphasis added by *Zimmerman* Court).

As evidence that AA's Rules and Regulations constituted a contract, the existence of which AA should be estopped from denying, Crum points out that Duncan had insisted that Crum follow the procedures therein in dealing with his staff. Moreover, in his deposition, Duncan stated that AA Rules and Regulations govern the employment of AA employees. Finally, Crum points out that at his post-termination hearing, McNamara stated that she was following the Rules and Regulations. As we stated in *Zimmerman,* however,

[c]ompliance, or attempted compliance, with guidelines for discipline and discharge found in its employee manual should not be turned against an employer as evidence that it treated the manual as a contract. To equate compliance with employee manual guidelines with treatment of a manual as a contract is to create a claim "Catch 22" for employers: If an employer follows the guidelines in disciplining or discharging an employee, the employee could argue that the em-

ployer thereby treated the manual as a contract; but if an employer does not follow the guidelines, then the employee could excoriate the employer for failing to follow the guidelines that it represented it would follow.

932 F.2d at 472.

In *Zimmerman,* we noted that "[a]lthough the [employer's] handbook contained fairly detailed procedures for discipline and discharge, that handbook, unlike the manual in *Aiello,* did not provide that employees would only be discharged for good cause." 932 F.2d at 472. The same is true here. Crum argues that section 135–3 of the Rules and Regulations imply that AA may discharge an employee only for good cause. Such is not the case. Section 135–3, entitled *Peak Performance Through Commitment,* comprises as the district court found, "obvious goal enrichment and management performance guidelines." The guidelines deal with the proper way to deal with subordinates in order to create a positive atmosphere at the workplace. Crum quotes selectively and out of context to make his case. For example, he claims that the guidelines state that an employee "should not be discharged for a series of infractions or unacceptable job performance unless a record of counseling sessions, previous performance conduct, advisory letters and suggestions previously made to the employee can be presented." He neglects to include the first three words of the sentence, which are "In most cases ..." We find nothing in section 135–3 indicating a waiver of AA's right to terminate at will. As previously pointed out, Crum's job application expressly stated that employment was terminable at will. We find the language in the Rules and Regulations, as well, suggesting that employees, at least at the management level, are terminable at will. In section 135–4, regarding post termination hearings, there is a guideline stating that "[w]hen the discipline or discharge is of the sort involving the *intangibles* of management ability, judgment or discretion, a representative will not be permitted." [Emphasis added].

As we find nothing in AA's Rules and Regulations stating that AA may terminate management employees only for good cause, we find that Crum was terminable-at-will and that AA breached no contract in dismissing him.

*II. Crum Failed to Introduce Sufficient Evidence to Make a Prima Facie Case for Age Discrimination.*

Crum claims that he was discharged as the result of age discrimination, unlawful under 29 U.S.C. §§ 621–634 (1988). There is no dispute that Crum, born in 1935, is in the range of ages protected under the statute.

The first step in an age discrimination suit is for the plaintiff to make a *prima facie* case, thereby shifting the burden of production to the defendant. We have stated that, to make a *prima facie* case, a plaintiff must show that he

(1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; (4) was replaced by someone outside the protected class, or (5) by someone younger, or (6) show otherwise that his discharge was because of age:

*Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504–05 (5th Cir.1988) (*citing Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 565 (5th Cir.1983)).

Apparently, after Duncan dismissed Crum, AA temporarily assigned his duties to a group of *AMERICAN WAY* editors in their thirties. A few weeks after McNamara denied Crum's appeal, Duncan hired George Lodge, a man older than Crum, to replace him. This would seem to eliminate the possibility that Crum could make a *prima facie* case. He points out, however, that the position of publisher remained vacant for five months, and that Duncan hired Lodge only after this suit had been filed. Crum claims that this is evidence that AA actually eliminated his position and replaced him with his own staff. In other words, Crum claims that this is actually a reduction in force case. *See Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633 (5th Cir.1985). He claims that a Comptroller's report in the record supports his position. The report says that

"[t]he Publisher's position remains in the budget for Jan–Dec. Each month of delayed replacement will save us approximately $7,000." This certainly does not indicate that AA intended to eliminate the position. Moreover, if Duncan had hired Lodge before McNamara's decision, her investigation would have appeared to be a sham.

We agree with the district court, which found

> that Crum has failed to produce one scintilla of evidence to show that [the thirty-something crowd] replaced Crum. Although Crum alleges that Barbara Geraghty is one of the three individuals that "replaced" Crum until Lodge was hired, interestingly enough, Ms. Geraghty has filed a lawsuit alleging that she was never given the job of publisher. Ms. Geraghty's complaint establishes two points. First, Geraghty alleges that she was not offered the publisher's position. Second, Geraghty's complaint establishes that Geraghty's position, until her termination, was associate-publisher, not publisher, as Crum contends.

> The facts indicate that [the thirtysomethings] were working in their capacities, save some additional responsibilities, until Crum's successor, George Lodge, was hired in mid-April, 1989.

Crum claims that it was not the district court's duty to decide whether he had made a *prima facie* case. Of course this is true. If there were a genuine issue of material fact, such a decision would be made by the trier of fact. The district court properly found, however, that Crum had presented no evidence by which a reasonable factfinder could conclude that he had made a *prima facie* case.

### III. Crum Cannot Succeed on his Defamation Claim.

■ The record indicates that when Duncan decided to dismiss Crum, Duncan informed the *AMERICAN WAY* staff that Crum would be on leave pending the results of the investigation conducted by Dr. Platt who would be speaking to Crum and other staff members. Crum claims that this implied that he was psychologically unstable and that therefore the statement was slanderous. This is simply untenable. Announcing to the staff that Crum was on leave pending the results of an investigation by an industrial psychologist/management consultant there to examine the organization at *AMERICAN WAY* can in no way be construed as an allegation that Crum was mentally disturbed. Under Texas law, slander "is a defamatory statement orally communicated or published to a third person without legal excuse." *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986). Because Crum has pointed to no evidence that Duncan defamed him, as a matter of law his defamation claim must fail.[1]

### IV. The District Court Correctly Dismissed the Fraud Count.

In response to the district court's order that the parties brief the fraud issue, Crum responded that

> [f]air adjudication of the fraud claim requires its presentation in the context of the contract, age and other tort claims. To isolate fraud from the facts as to contract, age and other torts restricts opportunity to understand and evaluate the fraud claim.

.    .    .    .    .

> For if Crum's employment was actually "at will", and discharge could by "with or without cause"; or if discharge was not restricted by the Age Act or tort law, there would be little point for Vice–President Duncan to engage in fraud to get rid of Crum.

Therefore, as we have found that Crum's other claims fail as a matter of law, his fraud claim is without support.

### V. The District Court Properly Dismissed the Emotional Distress Count.

■ Crum expends two sentences of his brief claiming that the district court did not

---

1. We need not address the district court's alternate finding that even if Duncan did defame Crum, Duncan was qualifiedly immune under Texas law as an employer communicating to employees as to a matter in which they had a legitimate interest.

dispose of his claim of intentional infliction of emotional distress. The district court's judgment expressly dismissed his claims on the merits. Moreover, the district court correctly found that mere allegations of malice will not withstand summary judgment. Crum has failed to make any showing of malice on Duncan's part.

*VI. Summary Judgment was not Premature.*

Federal Rule of Civil Procedure 56(b) states that a defending party may move for summary judgment "at any time." The court must then decide if the record is sufficient to make the determination that no genuine issue of material fact exists. Crum argues that the time was not ripe for summary judgment because unresolved discovery motions were outstanding.

■ We find the voluminous record more than sufficient to support summary judgment. AA filed its motion for summary judgment after more than a year of discovery. What is more important, however, is that the discovery sought by Crum could not have aided him. Crum sought to depose Duncan, after already having extensively deposed him, to investigate the reasons for Crum's discharge. As we have already found that AA employed Crum at-will, this discovery could have availed him nothing. Crum also sought discovery as to any other former AA employees who might have filed wrongful discharge claims. As we have determined that he was an at-will employee who could not have made a *prima facie* case of age discrimination, this discovery could not have helped him. Finally, Crum sought discovery as to any instructions AA might have given the *AMERICAN WAY* staff as to dealings with Crum subsequent to his dismissal. Crum has failed to explain any way that such discovery could have aided his case.

## CONCLUSIONS

The district court properly determined that Crum has proffered no evidence by which a reasonable factfinder could determine that he was the victim of slander, intentional infliction of emotional distress or age discrimination. Moreover, as a matter of law, AA employed Crum at-will. Therefore the decision of the district court is AFFIRMED.