IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 97-30104

JEFF ARMSTRONG,

Plaintiff-Appellant,

versus

TURNER INDUSTRIES, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

May 14, 1998

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Jeff Armstrong (Armstrong) appeals the magistrate judge's grant of summary judgment in favor of defendant-appellee Turner Industries, Ltd. (Turner).

**Facts and Proceedings Below**

Armstrong filed this suit after unsuccessfully seeking employment as a pipefitter with Turner, alleging that Turner had discriminated against him on the basis of disability in violation of Title I of the Americans with Disabilities Act (ADA). 42 U.S.C. §§ 12101 to 12117. Armstrong's suit asserted two distinct claims. First, he alleged that he was denied employment because he was perceived as being disabled. Second, he alleged that he was

subjected to a pre-offer medical examination and inquiry in violation of section 12112(d). The parties consented to proceeding before a magistrate judge under 28 U.S.C. § 636(c). The magistrate judge granted summary judgment in favor of Turner on both claims. Armstrong timely brought this appeal, challenging only the dismissal of the second claim. Because Armstrong has failed to demonstrate that he is entitled to relief in the form of damages, and because he lacks standing to seek injunctive or declaratory relief, we affirm.

I. Factual Background

On June 24, 1994, Armstrong applied for a position with Turner Industries as a pipefitter.[1] Upon presenting himself for consideration at Turner's personnel office, Armstrong was administered a written, skill-based qualification examination. He successfully completed the examination,[2] and was told to return after lunch to finish the application process. Upon returning, he was given several pages of paperwork to fill out. Among the application forms was a "Second Injury Fund Questionnaire" (Questionnaire). The first page of the Questionnaire contained the

---

[1]

As noted by the magistrate judge, there is some ambiguity in the record as to the precise date on which Armstrong applied. *Armstrong v. Turner Industries, Ltd.*, 950 F.Supp. 162, 163 n.3 (M.D. La. 1996). Because the dates are not relevant to the issues on appeal, we assume for convenience that Armstrong applied on the date that is listed on the "Second Injury Fund Questionnaire" that Armstrong filled out on the day of the events in question (June 24, 1994).

[2]

There is no dispute regarding Armstrong's qualifications as a pipefitter. *Armstrong*, 950 F.Supp. at 164 n.4.

2

inquiry: "Are you bothered with or have you ever had the following," followed by a list of approximately seventy ailments ranging from arthritis to vertigo. The applicant was instructed to answer with respect to each of the illnesses listed. On the second page of the Questionnaire there were several broad, general questions regarding the applicant's medical history, including whether the applicant had ever been "a patient in a hospital or clinic," had ever had surgery, or had ever been hospitalized "for nervous trouble." It also asked about the applicant's worker's compensation history. The last question on the form was: "Have you ever had any injury or condition not mentioned on this form?" In filling out the form, Armstrong indicated that he had not received, nor was there a claim pending for, workers' compensation, and that he did not have any "injury or condition not mentioned" on the form.[3]

When he had finished filling out the forms, Armstrong and several other prospective employees were taken to a different part of the building for a brief medical examination. Each applicant was visually inspected for scars indicating previous surgery or

---

[3]

Armstrong also signed an affirmation appearing at the bottom of the page that read in part:

> "I have read the above and declare that I have had no injury, illness, or ailment other than as specifically herein noted. I certify that all information is true and accurate to the best of my knowledge. I understand that any falsification or misrepresentation will be sufficient grounds for my release from employment."

serious injury and was asked to provide a urine sample.[4]  While these examinations were being conducted, employees of Turner ran "background checks" on each applicant to verify the medical information provided on the application forms.[5]

Armstrong's background check indicated that a "possible asbestos exposure" had been reported in 1991.  His completed Questionnaire made no mention of any medical impairment or condition having to do with asbestos exposure.  The medic who had conducted the visual examinations subsequently brought Armstrong back into the examination room and informed him of the perceived discrepancy between the answers provided on the Questionnaire and the results of the background check.  Armstrong was informed that his failure to list the asbestos exposure on the Questionnaire constituted a "falsification" of the form and that his application for employment was being rejected due to the provision of incorrect and/or incomplete information.

---

[4]

The visual inspection required the removal of most or all of the applicant's clothing and was conducted in a private examination room.  The record seems to indicate that the applicants' saliva may also have been tested for signs of recent alcohol use.  This, however, appears to be the extent of the "examination."  There is no indication in the record that any other tests or procedures often associated with medical examinations (*e.g.*, measurement of heart rate, blood pressure, body weight, etc.) were conducted.

[5]

The precise nature of the background check performed is unclear from the record and briefs.  It appears that employees of Turner submitted the name and social security number of each applicant to a company that had access to an informational database containing either medical background or worker's compensation information (or both).  Each applicant apparently signed a consent form authorizing the background check.

II.  Proceedings Below

On July 11, 1994, Armstrong filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  After receiving a "right-to-sue" letter from the EEOC, he filed the instant suit on November 23, 1995, alleging two separate violations of the ADA.  First, Armstrong claimed that Turner had denied him employment because it perceived him as disabled.  Second, he alleged that he had been subjected to a preemployment medical inquiry and examination in violation of 42 U.S.C. § 12112(d)(2) of the ADA.[6]  Armstrong characterized his second claim as alleging an independently-actionable "facial violation" of the ADA.

After limited discovery and pre-trial activity, Turner moved for summary judgment.  With respect to Armstrong's failure-to-hire claim, Turner asserted that Armstrong was denied employment solely because he had failed to provide accurate information in filling out the Questionnaire, and not, as Armstrong alleged, because Turner had in any way perceived him as being disabled or because he had a record of disability.[7]  In moving for summary judgment on

_____

[6]

Section 12112(d)(2) provides that until a conditional offer of employment has been extended to an applicant, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." Section 12112(d)(1) provides that the general prohibition against discrimination on the basis of disability, contained in section 12112(a), "shall include medical inquiries and examinations."

[7]

In addition to the summary judgment motion itself, Turner provided a legal memorandum in support of the motion and both testimonial (in affidavit and deposition form) and documentary evidence tending to demonstrate that whenever a discrepancy between the information

Armstrong's second claim, Turner argued that because Armstrong was not "disabled" within the meaning of the statute, he lacked standing to maintain a cause of action based on Turner's alleged violation of the ADA's prohibition of preemployment medical examinations and inquiries.

Properly viewing the evidence before him in the light most favorable to Armstrong, the magistrate judge determined that "[t]he summary judgment evidence shows that the defendant did not form any attitudes or beliefs about the plaintiff's ability to function at work once the possible asbestos exposure was discovered. The only belief formed was the belief that the plaintiff did not truthfully answer the questions on the [Questionnaire]." *Armstrong*, 950 F.Supp. at 165. The magistrate judge further concluded that there was simply "no evidence that the defendant perceived the plaintiff's exposure to asbestos as substantially limiting him in his ability to work or engage in any other major life activity." *Id.* at 166. Accordingly, the magistrate judge granted summary judgment in favor of Turner on the refusal-to-hire claim.[8]

In ruling on the second claim, the magistrate judge noted the

_____

provided in the application process and the information generated through the "background checks" and limited medical examination was discovered, the applicant or employee who had provided the incomplete or erroneous information was denied employment or discharged from employment.

[8]

There was no assertion, nor any evidence, that Armstrong had (or that Turner believed he had) a record of an impairment that substantially limited one or more major life activities so as to come within the section 12102(2)(B) definition of disability.

"absence of any controlling or persuasive authority" on the question of whether the ADA provides a private right of action to a nondisabled individual who had been subjected to a preemployment medical examination or inquiry in violation of section 12112(d)(2).[9] Lacking apposite caselaw, the court proceeded to construe the provision in light of its text, purpose, and legislative history, concluding that "the most reasonable interpretation of [§ 12112(d)(2)] is that if a separate claim can be brought for violation of this section, it must be brought by a qualified individual with a disability as that term is defined by the ADA." *Id.* at 167. As the court had already determined that Armstrong was not disabled within the meaning of the ADA, it granted summary judgment in favor of Turner on Armstrong's second claim and dismissed the case.

III. Question Presented on Appeal

Armstrong appeals only the magistrate judge's ruling that the ADA does not provide him, as a nondisabled plaintiff, a private right of action to redress Turner's alleged violation of section

---

[9]

The magistrate judge stated that the "parties did not cite and the court did not find any cases specifically addressing the question whether an individual [such as Armstrong] who does not meet any of the three alternative definitions of disability may maintain a claim for violation of the ADA's standards regarding medical inquiries during the job application process." *Armstrong*, 950 F.Supp. at 166 (footnotes omitted).

The magistrate judge noted that Armstrong claimed there was "a genuine dispute . . . whether defendant made a conditional offer of employment before asking him to provide a medical history and submit to a medical examination," *id*. at 163, but did not ultimately resolve that issue. However, Turner concedes that the record does reflect a factual dispute in that one respect.

12112(d)(2)(A). Armstrong has abandoned his failure-to-hire claim on appeal and does not challenge the magistrate judge's determination that Turner's refusal to employ him was not motivated by disability. Likewise, he does not dispute the conclusion that he is not disabled within the meaning of the ADA; nor does he challenge the determination that he was never "perceived as" or "regarded as" being disabled by Turner. And he has never claimed that he had (or that Turner believed he had) a record of having a disabling impairment within section 12102(2)(B).

As a result, on appeal Armstrong raises the single, discrete legal question whether the ADA provides a private right of action for nondisabled job applicants who are subjected to preemployment medical examinations and inquiries in violation of section 12112(d)(2)(A). He asserts that the magistrate judge erred in his statutory construction of this provision and urges this Court to reverse on that basis.

This appears to be a question of first impression among the circuit courts,[10] and involves difficult issues of statutory interpretation. We are not unmindful either of the significance of this issue or of the inevitability and necessity of its resolution

_____

[10]

*See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 n.5 (10th Cir. 1997) (declining to decide whether the ADA provides a cause of action to an unsuccessful job applicant subjected to a prohibited inquiry). The question, however, has now been decided by a few district courts. *See, e.g., Griffin v. Steeltek, Inc.* 964 F.Supp. 317 (N.D. Okla. 1997) (holding that the ADA does not provide a right of action for nondisabled job applicants who are subjected to preemployment medical examinations and inquiries in violation of section 12112(d)(2)).

in an appropriate case. Nevertheless, we choose to unravel here only a few of the many strands interwoven in the tangle of issues that envelops the question presented.

Our partial reticence is occasioned by the policies of judicial restraint. *See Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989). As explained below, we find that, in the context of this case, Armstrong has not demonstrated any injury redressable by damages, and he lacks standing to seek declaratory and injunctive relief, so dismissal of his section 12112(d)(2)(A) claim was proper in any event, whether or not in some other context a nondisabled individual might be afforded judicial relief in respect to a section 12112(d)(2)(A) violation.

## Discussion

Armstrong and *amicus* EEOC both urge us to reverse the lower court's grant of summary judgment by construing section 12112(d) as providing Armstrong, and other potential litigants, a private right of action irrespective of disability. Neither address with any specificity what injury Armstrong seeks to redress or what remedy would be appropriate. At oral argument, the EEOC suggested that this Court first determine that the ADA grants Armstrong a cause of action, thereby reversing the lower court, and then remand for the determination of appropriate remedies.

However, we conclude that Armstrong has failed to allege any compensable injury and lacks standing to seek injunctive or declaratory relief, and, consequently, that any ruling by this Court as to whether Armstrong has, in the abstract, a cause of

9

action would ultimately be irrelevant to the disposition of this lawsuit. While the EEOC is correct in asserting that a determination as to the availability or existence of a cause of action may be made in isolation, without considering what relief may (or may not) be available to the plaintiff in the particular case under consideration, the converse proposition is also true (and, in the case at bar, provides the appropriate framework for the resolution of Armstrong's appeal).[11] As the Supreme Court recognized in *Davis v. Passman*, 99 S.Ct. 2264, 2274 (1979), "the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." The Court elaborated on this distinction, stating that "cause of action is a question of whether a particular plaintiff is a member of the class of litigants that

---

[11]

For purposes of deciding a particular case, courts of appeal will occasionally assume *arguendo* a variety of questions, including, *inter alia*, standing to assert a claim, the existence of a cause of action, a material disputed fact, etc. And just as a court may assume the prudential standing of a litigant to assert a particular claim so that it may dispose of a case on the merits, it may assume the merits to dispose of the case on the question of remedies. *See, e.g., Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994) (court of appeals assumed litigant's standing to assert claim, as well as a fact material to the controversy, in order to reach and resolve case on grounds other than those relied on by the trial court); *Channer v. Hall*, 112 F.3d 214, 217 (5th Cir. 1997) (Court would "assume, arguendo, that the Thirteenth Amendment directly gives rise to a cause of action for damages under the analysis articulated in *Bivens*."); *State of Texas v. United States*, 106 F.3d 661, 664 n.2 (5th Cir. 1997) ("For purposes of today's disposition, we assume, without deciding, that the plaintiffs have standing."); *Cole v. United States Dep't of Agriculture*, 133 F.3d 803, 808 n.6 (11th Cir. 1998) ("Because we readily resolve the merits of the case, we assume arguendo that Cole has standing" and "has not waived the issue" in question.).

may, as a matter of law, appropriately invoke the power of the court; and relief is a question of the various remedies a federal court may make available." *Id.* at 2274 n.18. The *Davis* court also noted that, precisely because the "cause of action" inquiry is distinct from the "remedies" question, it is logically consistent for a litigant to have a cause of action but lack a remedy. The appropriate resolution of such a case is summary dismissal. As the Court stated, "[a]lthough petitioner has a cause of action, her complaint might nevertheless be dismissed under Rule 12(b)(6) unless it can be determined that judicial relief is available."[12]

Applying this analysis to the appeal before us, we choose to temporarily sever the "analytically distinct" question of whether the ADA provides Armstrong a cause of action in the abstract from the question of what remedies, if any, would be available to Armstrong assuming there were a cause of action, considering the issues in reverse order. In proceeding in this manner, we temporarily (and solely for purposes of discussion) assume (*arguendo*) both that, as Armstrong asserts, the ADA provides him with a private right of action *and* that he has adequately established a violation of 42 U.S.C. § 12112(d)(2)(A).

---

[12]

*Id.* at 2276. Discussing this "analytical distinction" set out in *Davis v. Passman*, Justice Brennan elaborated on the issue of dismissal, stating that "if the plaintiff fails either to plead a cause of action or to demonstrate the damages are appropriate as a matter of law, the complaint is dismissed under Federal Rule of Civil Procedure 12(b)(6). In the first instance, the complaint is dismissed for 'failure to state a claim,' while in the latter instance, the complaint is dismissed because it is not one 'upon which relief can be granted.'" *United States v. Stanley*, 107 S.Ct. 3054, 3069 n.7 (Brennan, J., dissenting in part).

11

I.  Remedies

In enacting the ADA, Congress provided that the remedies and procedures for ADA claims are those that have been provided under Title VII.  *Buchanan*, 85 F.3d at 200.  Title I of the ADA, which deals with employment discrimination, allows a private right of action to "any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or [of] regulations promulgated [by the EEOC] . . . , concerning employment."  Section 12117(a).

*Albemarle Paper Co. v. Moody*, 95 S.Ct. 2362 (1975), remains the seminal case defining the remedies appropriate under Title VII.  In *Albemarle*, the Court established the general rule that in crafting remedies for employment discrimination individuals injured by such discrimination are "to be placed, as near as may be, in the situation [they] would have occupied if the wrong had not been committed."  *Id.* at 2372.  This is described as the "make whole" purpose of Title VII.  *Id.*  Although *Albemarle* was a Title VII case, the principles stated therein provide a useful starting point for consideration of the remedial aspects of all federal employment discrimination laws.[13]

II.  Cognizable Injuries

---

[13]

*See* Robert Belton, *Remedies in Employment Discrimination Law* § 3.9 (1992) ("Although [*Albemarle*] and *Franks* [*v.Bowman Transp. Co.*] were decided in the context of Title VII, their substantive principles are, as a general rule, equally applicable as a useful starting points in resolving remedial issues in cases brought under section 1981, the ADEA, and the Equal Pay Act cases.") (footnotes omitted).

Under the "make whole" remedial theory, a court's first task is to determine the injuries caused by discrimination that require judicial relief.  In other words, the court must ascertain in what way the plaintiff is not "whole."  In the vast majority of employment discrimination cases, the asserted injury is an adverse employment decision (*e.g.*, refusal to hire, denial of promotion, or wrongful discharge), allegedly caused by or "because of" discrimination on the basis of a prohibited characteristic or trait such as gender, race, religion, national origin, age, or disability.  In this sense, the case *sub judice*, at least as presented on appeal, presents an atypical and uncommon suit.  Although the original complaint did allege an adverse employment action—Turner's refusal to hire Armstrong due to perceived disability—this claim was rejected by the court below and that ruling has not been challenged on appeal.[14]  The magistrate judge determined that there was no evidence indicating the employment action in question was tainted by disability discrimination, and consequently it does not constitute a compensable injury.[15]

---

[14]

The original complaint also alleged damages flowing from the allegedly discriminatory refusal to hire, including "substantial loss of income," "emotional distress," "pain and suffering." Because Armstrong chose not to appeal the magistrate judge's ruling that Turner's refusal to hire him was not, in any part, "because of" unlawful discrimination, he has waived this claim and neither the adverse employment decision, nor the consequential injuries, alleged below can constitute a compensable injury unless they were proximately "caused" by the specific ADA violation asserted on appeal.

[15]

The court below concluded that the "*only* belief [Turner] formed was that [Armstrong] did not truthfully answer the questions on the

13

Armstrong does not challenge this conclusion on appeal.[16]

[application] form."  *Armstrong*, 950 F.Supp. at 165 (emphasis added).  Turner did not perceive or regard Armstrong as disabled or substantially impaired in any way.  *Id.*  Further the court determined that the "summary judgment evidence shows that [Turner] did not form any attitudes or beliefs about the plaintiff's ability to function at work once the possible asbestos exposure was discovered."  *Id.*  In sum, the court below concluded that the information revealed by the unlawful medical inquiry did not lead Turner to deny Armstrong employment "because of disability," but rather because of the perception that he "did not truthfully answer the questions on the form."  *Id.* at 165.  Armstrong has not asserted that these conclusions are incorrect or that the record reflects a genuine dispute of material fact as to them.

[16]

It might be argued that because the medical inquiry revealed the discrepancy between the information provided by Armstrong and the information in the "background check," the inquiry "caused" Armstrong not to be hired.  In fact, *amicus* EEOC does make a related argument in their brief, asserting that "Turner's failure to hire Armstrong was caused by its adverse reaction to Armstrong's medical information."  This assertion is not consistent with the unchallenged determination of the court below regarding Turner's motivation, but even if the EEOC's contention were correct, it would not alter the outcome of this appeal.  As we made clear in *Buchanan v. City of San Antonio*, 85 F.3d 196 (5th Cir. 1996), a "causal link" must be established "between the specific ADA violations [alleged] . . . and the injuries sustained," for which a plaintiff seeks damages.  *Id.* at 200.  Under *Buchanan*, if section 12112(d)(2)(A) were to give rise to a private right of action, any concomitant liability would be limited by familiar tort principles such as "proximate cause."  It is a well-established principle of tort law that violation of a statute will not give rise to liability for resulting injuries unless, *inter alia*, the plaintiff was a member of the class of individuals the statute was intended to protect, and the injury was of the type contemplated by the statute and resulted from the hazard against which the statute was intended to protect.  *See Restatement (Second) of Torts* §§ 286 and 874A (1965).  *See also Gavagan v. United States*, 955 F.2d 1016 at 1020-21 (5th Cir. 1992).

In the case at bar, the harm caused, *i.e.*, an adverse employment decision, clearly falls within the class of harms covered by Title I of the ADA.  However, this harm did not result from one of the particular "hazards" against which the ADA was intended to protect (*i.e.*, employment discrimination on the basis of disability).  The magistrate judge determined, and Armstrong does not assert otherwise, that Turner's decision was *not* caused by an unlawful discriminatory motive.  Thus, although the medical inquiry may be construed as having been, in a  purely mechanistic

Although it is unclear, it appears that Armstrong implicitly argues (or assumes) that a violation of section 12112(d)(2)(A) constitutes a compensable injury in fact. We reject this reading of the provision. This Court has been unable to find any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability.[17] This is consistent with the general analysis and reasoning of our decision in *Buchanan,* which dealt with an alleged violation of the same provision that is at

---

sense, a cause of Turner's refusal to employ Armstrong, it was not, in the general tort sense, a legal or proximate cause of Turner's decision and thus does not constitute a compensable injury. The ADA simply cannot be reasonably construed as having been intended to protect a nondisabled job applicant from not being hired because a potential employer, incident to a prohibited section 12112(d)(2)(A) inquiry, either learns that the applicant has an embezzlement or murder conviction or believes, correctly or incorrectly, that the applicant has not been completely honest and forthcoming during the job application process. Moreover, in such cases, including this one, it is obviously irrelevant to the resulting failure to employ that the inquiry was not preceded by a conditional employment offer under section 12112(d)(3).

As we stated in the context of a similar federal antidiscrimination statute, the ADA "cannot protect . . . employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir.1988) (ADEA case).

[17]

The magistrate judge found "nothing in the legislative history which supports the conclusion that Congress intended any job applicant to have a cause of action for violation of the ADA rules on preemployment examinations and inquiries." *Armstrong*, 950 F.Supp. at 167. Likewise, we are unable to find any support for the proposition that a violation of the section 12112(d), standing alone, was intended to give rise to damages liability.

15

issue here.[18]  We find this approach to be consonant with the structure of the ADA as well as the principles embodied in the

---

[18]

The general analysis in *Buchanan* seems to imply—or at least is susceptible to the reading—that a mere violation of section 12112(d)(2)(A) is insufficient to give rise to liability absent the existence of an actual injury of which the violation is a legal and proximate cause.  In *Buchanan*, the plaintiff was a patrolman for the Bexar County Sheriff's Department who repeatedly applied and was rejected for a position on the San Antonio police force.  85 F.3d at 197.  Eventually Buchanan filed suit alleging that he had been discriminated against on the basis of disability.  The case went to trial, and, at the end of plaintiff's evidence, Buchanan moved for and was granted judgment as a matter of law based on two specific violations of section 12112(d).  *Id.* at 198.  The court submitted two special interrogatories to the jury on the issues of causation and amount of damages.  *Id.*  The jury answered "yes" to the first interrogatory, which asked whether Buchanan had "sustained damages from [the defendant's] violation of the [ADA]," and granted $300,000 in compensatory damages.  *Id.*  In addition to the $300,000 in compensatory damages, the district court awarded back pay, attorneys' fees, and post-judgment interest. *Id.*

On appeal, this Court concluded that Armstrong had, as a matter of law, established a violation of section 12112(d)(2).  *Id.* at 199.  We then went on to briefly discuss the predicates of a damages claim based on a violation of that subsection.  *Id.* at 199-200.    We began by stating that "[a] further gap in support of [the] judgment is the *absence of proof of damage*, even if the other predicates had been established, *caused by* a premature medical examination."  *Id.* at 199-200 (emphasis added).  We observed that "compensatory damages, like other damages, are not recoverable under Title VII (and derivatively under the ADA) unless the prohibited employment practice was the cause of the applicant's rejection."  *Id.* at 200 (footnote omitted).  In discussing the possible injuries for which Buchanan might receive compensation, we mentioned only those associated with the adverse employment decision alleged.  We made no mention of any possibility that Buchanan might receive relief in the form of damages absent proof of actual injury, and we plainly assumed precisely the opposite.

In the case at bar, Armstrong has not alleged any actual injury flowing from the alleged section 12112(d)(2)(A) violation, nor has he directed this Court's attention to any basis for any damages relief.  In fact, at oral argument before this Court, Armstrong's counsel seemed to admit that, for this very reason, Armstrong was not entitled to damages relief.

16

statute.[19]  Consequently, we hold that damages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision.  There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation.[20]

This exhausts the various bases for a damages claim by Armstrong.[21]  Because Armstrong has not identified a cognizable and

---

[19]

We note that in what appears to be the only reported case construing the Rehabilitation Act regulations on which section 12112(d) is based the court came to a similar conclusion.  *See Doe v. Syracuse School Dist.*, 508 F.Supp. 333 (N.D.N.Y. 1981) (violative preemployment inquiry held to be "persuasive evidence" of alleged employment discrimination, but medical inquiry did not, in and of itself, constitute discriminatory conduct so as to be compensable under the Rehabilitation Act).

[20]

This holding can also be explained as an application of the "make whole" purpose of Title VII remedies.  Armstrong is entitled to no remedy because he has not been injured and has no need of being made "whole."  Suppose Armstrong *had* been hired and then brought a suit based on the premature medical examination.  To what relief would he be entitled?  A "make whole" remedial scheme would not provide him with a damages remedy because he already occupies (in the hypothetical) precisely the same position that he would have occupied absent the unlawful employment practice.  Similarly, where a plaintiff cannot demonstrate actual injury, providing a damages remedy for a violation of section 12112(d)(2)(A) would appear to be inconsistent with the "make whole" theory of equitable relief espoused in *Albemarle*.  Accordingly, we hold that a mere violation of section 12112(d)(2)(A) does not automatically, or *per se*, give rise to damages liability.  We do not, however, foreclose the possibility of liability based on any injuries legally and proximately caused by such a violation.

[21]

He did not allege (or present summary judgment evidence of) any injury, other than discussed above, arising out of the alleged section 12112(d)(2)(A) violation, and he has not alleged (or presented summary judgment evidence of) actions exhibiting "malice or reckless indifference" even remotely sufficient to approach the type of conduct required to support punitive damages.

17

compensable injury arising out of the medical examination and inquiry, or alleged any corresponding damages, he has completely failed to demonstrate any entitlement to a damages remedy.

## IV. Availability of Injunctive Relief

The lack of an available damages remedy does not dispose entirely of Armstrong's appeal, for he seeks equitable relief as well. In his complaint, Armstrong requested "[i]njunctive relief ordering Turner Industries to cease requiring prospective employees to complete medical data in their applications." In oral argument to this Court, Armstrong's counsel reiterated this request, arguing that Armstrong is entitled "as a job applicant" to have employers abide by the proscription of section 12112(d)(2)(A) and that Armstrong is entitled to an injunction ordering Turner to "cease and desist from using this employment practice." However, Armstrong has failed to meet the prerequisites for asserting injunctive relief, and we hold that he lacks the requisite standing to seek either injunctive or declaratory relief.

We consider as a threshold matter Armstrong's standing to seek equitable relief.[22] The Supreme Court articulated the constitutional "preconditions for asserting an injunctive claim in

---

[22] *Brown v. Edwards*, 721 F.2d 1442, 1446 (5th Cir. 1984). As stated in *Warth v. Seldin*, 95 S.Ct. 2197, 2205 (1975), the federal "judicial power exists only to redress or otherwise to protect against injury to the complaining party." We recently re-emphasized the "case or controversy" requirement that is at the root of the standing doctrine in *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997), where we stated that to maintain suit, including one for declaratory or injunctive relief, a plaintiff "must show that an actual case or controversy under the ADA exists."

a federal forum" in *City of Los Angeles v. Lyons*, 103 S.Ct. 1660, 1669 (1983), holding that to "satisfy the threshold requirement imposed by Art. III of the Constitution," a plaintiff seeking injunctive relief must "show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged . . . conduct."[23] The Court also clarified that "[p]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."[24]

The application of this limitation of standing to seek injunctive relief in the Title VII context is illustrated by *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C. Cir. 1994), a case that is, in several relevant respects, analogous to the one *sub judice*. *Fair Employment Council* involved suspected violations of Title VII by an employment referral service. In order to demonstrate the discrimination, two black college students were hired by the Fair Employment Council to act as "testers." The two minority testers

---

[23]

*Id.* at 1665 (citations omitted). Additionally, "the injury or threat of injury must be both real and immediate, not [merely] conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted).

[24]

*Id.* at 1666. This prerequisite to bringing a claim for injunctive relief was recently reiterated in *Luhan v. Defenders of Wildlife*, 112 S.Ct. 2130 (1992), where the Court held that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* at 2138 (quoting *O'Shea v. Littleton*, 94 S.Ct. 669, 676 (1974)).

were paired with two white testers, "equipped with fake credentials intended to be comparable," and instructed to seek employment referrals from the agency. *Id.* at 1270. Although all four testers presented similar credentials and qualifications, both of the white but neither of the black testers received job referrals. *Id.* On the basis of this disparate treatment, the Fair Employment Council and the two black testers brought suit in federal district court under Title VII.

In determining whether the two testers had standing to pursue prospective equitable relief enjoining future discrimination by the defendant employment agency, the court of appeals held the *Lyons* rule applicable, stating that "[t]o pursue an injunction or a declaratory judgment, the [plaintiffs] must allege a likelihood of future violations of their rights by [the defendant], not simply future effects from past violations." *Id.* at 1273. Because the testers did not allege that they personally would again suffer injury from, or be subjected to, the defendant's allegedly illegal behavior, the court held that they lacked standing to seek prospective equitable relief in the form of an injunction. *Id.* at 1272-74.

Both the reasoning and holding of *Fair Employment Council* are directly applicable to the case at bar. Armstrong, like the testers, has alleged only a single, past statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future. He has not indicated that he plans to seek employment with Turner again, nor does he purport to

20

represent a specific class of individuals that is in danger of discrimination from Turner. Consequently, Armstrong's allegations are clearly insufficient under well-established law to support standing to seek an injunction.[25]  Although Armstrong did ask for declaratory relief, we note that for the same reason he lacks standing to procure injunctive relief he likewise has no standing to seek declaratory relief. *See, e.g., Brown v. Edwards*, 721 F.2d at 1447; *Fair Employment Council of Greater Washington, Inc.*, 28 F.3d at 1272-1274; *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 at 312 (5th Cir. 1997).  Armstrong has failed to allege any probability of future injury, and consequently lacks standing to seek prospective relief precluding Turner from future violations of section 12112(d)(2).[26]

---

[25]

The requirement articulated in *Lyons* is cited with relative frequency in cases denying injunctive relief. *See, e.g., Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1286 (5th Cir. 1992); *Brown v. Edwards*, 721 F.2d 1442, 1446-47 (5th Cir.1984). *Cf. Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions.").

[26]

The lack of any probable future harm distinguishes the case at bar from *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997), in which the Tenth Circuit held that an employee had standing to challenge her current employer's imposition of a drug disclosure and testing policy. The plaintiff asserted that the drug disclosure policy violated the ADA's prohibition of medical inquiries by employers contained in 42 U.S.C. § 12112(d)(4)(A) and sought an injunction enjoining enforcement of the policy.  The court held that the plaintiff in *Roe* had standing to challenge the medical inquiry because she faced imminent injury if she refused to abide by the policy, and a favorable decision of the court—in particular an injunction prohibiting enforcement of the drug disclosure policy—would clearly

21

## Conclusion

For the foregoing reasons, the district court's dismissal of Armstrong's suit is

AFFIRMED.

---

serve to prevent this injury. *Id.* at 1229.