**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1582**

RICHARD B. PENCE,

Plaintiff - Appellant,

versus

TENNECO AUTOMOTIVE OPERATING COMPANY,
INCORPORATED, a Delaware Corporation, t/a
Walker Manufacturing Company, t/a Tenneco
Automotive,

Defendant - Appellee.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg. Samuel G. Wilson, District
Judge. (CA-04-75-5)

Argued: February 2, 2006                    Decided: March 7, 2006

Before WIDENER, LUTTIG, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Timothy Earl Cupp, CUPP & CUPP, P.C., Harrisonburg,
Virginia, for Appellant. Thomas J. Brunner, BAKER & DANIELS, South
Bend, Indiana, for Appellee. **ON BRIEF:** Alison G. Fox, BAKER &
DANIELS, L.L.P., South Bend, Indiana; Thomas E. Ullrich, WHARTON,
ALDHIZER & WEAVER, P.C., Harrisonburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Richard Pence appeals the district court's grant of summary judgment for Tenneco on Pence's claims under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq.  For the reasons that follow, the judgment of the district court is affirmed.


I.

Richard Pence had worked for Tenneco for over 30 years before his termination in 2003.  J.A. 552.  Despite having somewhat "eccentric" views about federal taxation and Tenneco's treatment of him, see J.A. 436, 555, 561-67, 626, Pence was considered by his bosses to be a "good performer," J.A. 434-35, and prior to October 2003, it is undisputed that Tenneco had no reason to terminate Pence, J.A. 512.

However, on Friday, October 17, 2003, Pence had a conversation with Nurse Evelyn Burner. J.A. 163.  Burner e-mailed Human Resources Manager Rod Little the following Monday, October 20, 2003, claiming that during the course of this conversation Pence had made threatening remarks.  Specifically, her e-mail stated that Pence said that "when he leaves here that he will be taking a bunch of people with him" and that when she "asked him if he meant here at [Tenneco] or at the court house downtown," he "responded by stating both places and that he has AK's and more

-2-

ammo than Rockingham County." J.A. 163. In addition to e-mailing Little on Monday, Burner had alerted the FBI to Pence's statements over the weekend. J.A. 119, 132.

After talking to Burner, Little immediately contacted a superior, as well as the legal department. J.A. 101, 105, 115. In addition, Tenneco contacted the local police, J.A. 137-40, as well as its security consultant, J.A. 102, 105, 116. The next day, October 21, 2003, Pence was removed from work, ordered not to return until notified, put on paid disability leave, and mandatorily referred to Tenneco's Employee Assistance Program, J.A. 105-07. Tenneco's EAP referred Pence to a psychologist who, on November 3, 2003, concluded that, based only on Pence's self-reporting, he was "unable to provide an opinion one way or another" on whether Pence had a mental condition. J.A. 224. On November 21, 2003, a conference call was held in which several EAP employees, Tenneco's legal counsel, and Little participated. J.A. 383. Little's notes from the call state that an EAP employee told him that "[e]veryone should be cautious of safety not only at the immediate time but in the future," that "Pence demonstrates a high level of paranoia," that Pence "does not have a condition that would be responsive to counseling," and that "[i]t is not a treatable condition with continued counseling." J.A. 519.

Tenneco thereafter had its security consultant conduct a safety evaluation of Pence's plant, made improvements to the plant

on the basis of this evaluation, and then terminated Pence on December 22, 2003, when the plant was largely empty due to a holiday shut-down. J.A. 108-09. Pence was terminated on the formal ground that his threatening statements violated workplace rule 29, J.A. 72, which in substance "[p]rohibits threatening, intimidating, coercing, or harassing co-workers," J.A. 66, 72.

II.

We first address Pence's argument that the district court improperly granted summary judgment to Tenneco on his claim of wrongful termination under the ADA. We conclude that summary judgment was proper because, even assuming that Pence established his prima facie case, Pence failed to demonstrate that Tenneco's asserted non-discriminatory justification for his termination was pretextual and that a rational factfinder could conclude that his termination was the result of disability discrimination. See Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000).

Tenneco asserted that Pence was fired because it believed that he had made threatening remarks in violation of a workplace rule. Unrefuted evidence demonstrates that Tenneco believed that Pence had threatened the lives of other employees: Burner sent an e-mail to Little alleging that Pence had said "when he leaves here that he will be taking a bunch of people with him" and that "he has AK's and more ammo than Rockingham County," J.A. 163, and Little and

-4-

Burner, rightly or wrongly, construed those statements as death threats, calling the FBI, the local police, and Tenneco's security consultant within days of learning of the statements, J.A. 105, 119, 132, 137-40.[1]

Pence puts forth three reasons why Tenneco's reliance upon its belief that he had made threatening remarks in violation of a workplace rule is merely a pretext for disability discrimination. None of the reasons is sufficient to meet his burden under Rowe.

First, Pence repeatedly insists that he did not make any threat and that Burner misconstrued what he said. This is entirely immaterial. Just as "[t]he law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability," Jones v. American Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999), it also follows that the ADA is not violated when an employer discharges an employee because of a mistaken perception of misconduct, even if the misconduct would have been related to a disability. As the district court correctly recognized, J.A. 714-15, it makes no difference if the employee was in fact guilty of misconduct; as long as the employer discharged

---

[1]Although Pence was never asked about the threatening statements, J.A. 453, this fact at most demonstrates that Tenneco jumped to conclusions by inadequately investigating Burner's allegations. But even thus construed in the light most favorable to Pence, this fact alone is insufficient to demonstrate that Tenneco did not actually believe that Pence had threatened the lives of other employees.

the employee because it honestly believed that the employee had engaged in misconduct, then the employer has not discriminated on the basis of disability.

Second, Pence attempts to demonstrate pretext by proffering evidence showing that similarly situated employees were not fired. However, none of his evidence demonstrates that Tenneco ever failed to fire an employee who it believed had threatened to kill other employees. In other words, none of the employees whom Pence relies upon are actually similarly situated. See King v. Rumsfeld, 328 F.3d 145, 151-52 (4th Cir. 2002) (rejecting an attempt to demonstrate pretext based upon the defendant's conduct toward an employee who was not similarly situated to the plaintiff). Two of the employees Pence cites are not alleged to have threatened to kill anyone, see J.A. 630-32 (David Cathell); J.A. 643, 646 (Dwight Hensley), and nothing in the record refutes Little's testimony that he had not found any evidence that supported an anonymous allegation that a third employee, Vernon Parker, had threatened to kill other employees, see J.A. 504-07, 547-49, 643-44.[2]

Third, Pence argues that summary judgment was improper by relying upon Little's notes from the conference call, which,

---

[2]Moreover, Tenneco affirmatively tendered evidence that it had terminated employees who it believed had made death threats, J.A. 109, and Pence's argument that those employees were allowed to give their side of the story, J.A. 73-75, once again proves at most only that Tenneco reached a rash decision in his case, not that Tenneco did not actually base his termination on its belief that he had made a death threat.

construed in the light most favorable to Pence, could raise the inference that Tenneco believed that Pence suffered from an untreatable mental condition of paranoia. See J.A. 519. However, even given that inference, no reasonable factfinder could conclude that Tenneco's asserted reason for Pence's termination was a pretext. Cf. Rowe, 233 F.3d at 830 (recognizing that even when a plaintiff demonstrates a prima facie case and pretext, summary judgment for the defendant is required when no rational factfinder could conclude that the challenged action was discriminatory).[3] Based on the record, no rational factfinder could conclude that this passing reference to a belief that Pence was paranoid was the reason for his termination, as opposed to evidence that Tenneco thought the death threat was caused by paranoia. And to repeat, because of Jones, Tenneco's belief that Pence had made a death threat was a permissible nondiscriminatory reason for his termination, even if Tenneco believed that a mental condition had caused Pence to make the threat.

Because Pence cannot demonstrate that Tenneco's non-discriminatory reason for his termination was pretextual and that his termination was the result of unlawful disability

---

[3]Alternatively, Little's notes could be viewed as direct evidence of disability discrimination. But even so viewed, summary judgment would still be appropriate for the same reason discussed above.

discrimination, summary judgment was properly granted on Pence's claim of wrongful termination under the ADA.[4]

## III.

Next, we turn to Pence's claim that he was forced to undergo a mental examination in violation of the ADA. We conclude that the district court did not err in granting summary judgment to Tenneco on this claim because the psychological examination was permitted under the ADA, as it was "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).[5]

As a threshold matter, we note that whether a mental examination was "job-related and consistent with business necessity" is an objective inquiry. See Tice v. Centre Area Transportation Authority, 247 F.3d 506, 518 (3d Cir. 2001). We therefore do not resolve any dispute about what Tenneco's subjective motivations were for having Pence examined by the EAP. Rather, we need only decide whether Tenneco's decision to have Pence examined, after it was alleged that he had made death threats

---

[4]For the same reason, the district court's grant of summary judgment to Tenneco on Pence's ADA retaliation claim is also affirmed. See J.A. 716-17.

[5]We therefore have no need to decide whether, as the parties appear to have assumed, an individual who is not disabled under the ADA can nevertheless bring a claim under section 12112(d). See Armstrong v. Turner Indus., Inc., 141 F.3d 554, 558 (5th Cir. 1998) (recognizing the difficulty of the statutory interpretation question).

against other employees, was "job-related and consistent with business necessity."

Analyzing the issue thus framed, we conclude that the ADA does not prevent an employer from psychologically evaluating an employee who has been alleged to have made death threats against other employees. It is undoubtedly "job-related and consistent with business necessity" to ascertain whether such an employee poses a danger to the workplace, to investigate how best to deal with any security risk that exists, and to determine whether the termination of the problem employee could potentially trigger the threatened actions or instigate a violent reprisal against the employee who informed the employer that the threatening statements were made.

Pence argues that such an examination is not "consistent with business necessity" because an examination is unnecessary until the employer verifies that a threat was actually made. He therefore argues that his examination was unnecessary because he did not actually make any threats and if Tenneco had simply asked him for his side of the story, it would have realized this as well. We reject this argument because it implies that employers must either alert a potentially dangerous employee that his colleagues have reported him and take the risk that retaliation will occur or forgo a psychological examination and take the risk that the security threat will not be resolved in the safest way possible. The phrase "business necessity" need not, and should not, be interpreted to

require such a result. Instead, we believe that the ADA is satisfied provided the employer has a good faith belief that an employee has made death threats, which Tenneco did.[6]

IV.

Finally, we turn to Pence's claims under the Family and Medical Leave Act. We conclude that the district court correctly granted summary judgment because Pence does not have a "serious health condition," which is a threshold requirement for entitlement to FMLA leave for Pence. See 29 U.S.C. § 2612(a)(1)(D); see also J.A. 718. As relevant to this case, the FMLA defines a "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). There is no

---

[6]Pence, relying only upon an EEOC guidance document, also argues that in order for an examination to be "job-related and consistent with business necessity," the employer must have had a reasonable belief that the employee was impaired by a medical condition. This argument is flawed for two reasons. First, the fact that the EEOC advises that an examination will "generally" be permissible when there is "objective evidence" that "an employee's ability to perform essential job functions will be impaired by a medical condition" does not require the negative inference that an examination is necessarily prohibited when the employer is uncertain whether the employee is impaired by a medical condition. Second, and more fundamentally, such an interpretation would be absurd in this context since, in the face of perceived death threats, employers need to determine whether there is a substantial security risk and how most safely to deal with such a risk if it exists, questions that a psychological examination helps answer regardless of whether the threatening employee actually suffers from a mental condition or is "merely" dangerous and violent.

-10-

evidence that Pence has a mental condition or impairment, J.A. 224, and in any event, Pence has repeatedly insisted that he does not suffer from any mental condition or impairment, thereby admitting that he does not have a "serious health condition."  Pence tries to evade this concession by relying upon 29 C.F.R. § 825.114(b), which states that "treatment" includes "examinations to determine if a serious health condition exists."  But Pence fails to recognize that under section 2611(11)(B), "treatment," however defined, must be for a mental condition or impairment, and so his concession that he does not have one is fatal.


CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>